**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Michael Dunn,<br><br>Plaintiff,<br><br>v.<br><br>Diversified Adjustment Service, Inc.,<br><br>Defendant. | Case No.: 0:26-cv-3373<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. This action arises out of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., by Defendants and their collection agents in their illegal efforts to collect a consumer debt from Plaintiff.

## JURISDICTION

3. Jurisdiction of this Court arises under U.S.C. § 1692k(d), and 28 U.S.C. § 1367 for any pendent state law claims.

4. Venue is proper because the acts and transactions occurred here, Plaintiff resides in Minnesota, and Defendant transacts business here.

5. Defendant and its collection employees have transacted business within the State of Minnesota by attempting to collect a debt from Plaintiff via the telephone, the mails, and/or through the use of email while Plaintiff was located within and permanently residing within the State of Minnesota.

6. Defendant has transacted business within the State of Minnesota by operating a licensed collection agency, making collection calls into Minnesota, and directing debt collection activities to Minnesota.

7. Defendant has transacted business within the State of Minnesota by using means of interstate commerce to collect consumer debts from consumers in Minnesota, including Plaintiff, as well as being licensed to collect debts within this state.

## PARTIES

8. Plaintiff Michael Dunn (hereinafter "Plaintiff") is a natural person who resides in the County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

9. Plaintiff has suffered an injury in fact that is fairly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

10. Defendant Diversified Adjustment Service, Inc. (hereinafter "Defendant") is a collection agency operating from a principal office address of 600 Coon Rapids Blvd

NW, Coon Rapids, MN 55433-5549, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

11. Defendant's registered agent of process in Minnesota is:

C T Corporation System Inc.

1010 Dale St N

Saint Paul, MN 55117–5603

12. Defendant uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

13. Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

14. Defendant and its employees and agents directly and indirectly participated in the unlawful efforts to collect an alleged debt from Plaintiff, as further described in this complaint.

## FACTUAL ALLEGATIONS

15. This is a case about a debt collector who attempted to collect a single alleged medical debt by sending Plaintiff seventeen separate collection letters within approximately one hour, each assigning a different account number to the same alleged obligation while demanding payment of the identical balance, thereby creating the false and misleading impression that Plaintiff owed multiple separate debts.

16. Within one year immediately preceding the filing of this complaint, Defendant

attempted to collect from Plaintiff a financial obligation that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), by attempting to collect this debt from Plaintiff in the State of Minnesota.

17. Plaintiff allegedly incurred a personal debt Health Partners for his personal medical care in the approximate amount of $5,685.13 ("Debt").

18. The Debt was incurred for personal, family, or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5).

19. On or around June 22, 2026, Defendant began attempting to collect the Debt from Plaintiff.

20. Plaintiff disputes this alleged Debt, the final bill on this account, and any remaining balance, and is represented by the undersigned counsel both with respect to this Debt and to the claims made herein.

21. Sometime thereafter, the Debt was consigned, placed or otherwise transferred to Defendant for collection from Plaintiff.

**First Round of Collection Letters**

22. On or about June 22, 2026, in the course of 59 minutes, Defendant transmitted a series of seventeen separate debt collection emails to Plaintiff at his email address, MIKE.DUNN0429@gmail.com ("Emails")

23. The Emails from Defendant attached a separate debt collection letter directed to Plaintiff.

24. The Emails from Defendant each had attached collection letters which identified HealthPartners as the creditor, demanded payment of the identical alleged debt, and represented that as of June 16, 2026, Plaintiff owed $5,685.13.

25. Although each of the Emails sought collection of the same alleged balance owed to the same creditor, Defendant assigned a different reference number to each communication and identified a different HealthPartners account number in each letter.

26. Each of the Emails nevertheless demanded payment of the identical sum of $5,685.13.

27. The seventeen Emails were transmitted within less than one hour of each other and each purported to be an initial collection notice regarding the same alleged obligation.

28. A consumer receiving seventeen separate collection notices, each identifying a different account number while simultaneously demanding payment of the exact same amount allegedly owed to the same creditor, could reasonably believe that he owed seventeen separate debts, that additional undisclosed accounts existed, or that immediate payment was required to avoid adverse consequences with respect to multiple independent accounts.

29. Defendant's communications were false, misleading, deceptive, confusing, and materially misleading to the least sophisticated consumer because they misrepresented, or at a minimum obscured, the character, identity, and status of the

alleged debt by assigning multiple account identifiers to what Defendant simultaneously represented as the same obligation.

30. As a direct result of Defendant's conduct, Plaintiff experienced confusion regarding the nature and identity of the alleged debt and was required to expend time and effort attempting to determine whether Defendant was attempting to collect multiple obligations or a single debt.

31. The above-described communications and conduct from Defendant to Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(10), 1692f, 1692f(1), and 1692g, amongst others.

**Second Round of Collection Letters**

32. On or about June 25, 2026, Defendant transmitted two substantially identical debt collection communications to Plaintiff by email.

33. Each email attached a collection letter dated June 25, 2026, bearing the same Reference No., identifying HealthPartners as the creditor, and seeking to collect an alleged debt in the amount of $6,820.13.

34. Each collection letter represented that Plaintiff owed HealthPartners $6,820.13 as of June 22, 2026, that no interest or fees had accrued, and that the total amount of the alleged debt remained $6,820.13.

35. The letters further identified the same HealthPartners account number and advised Plaintiff of his rights under the Fair Debt Collection Practices Act.

36. Attached to each collection letter was a two-page itemization identifying approximately twenty-nine individual HealthPartners and Park Nicollet accounts that Defendant represented were included within the single alleged balance of $6,820.13.

37. The itemization reflected that the aggregate of those individual accounts equaled the total amount Defendant sought to collect.

38. The itemization attached to Defendant's second round of collection letters appears to substantially duplicate the accounts previously identified in Defendant's earlier collection letters, while adding additional alleged accounts to the same itemization, thereby expanding the alleged debt without explaining the basis for the additional charges.

39. The two June 25, 2026 collection letters were duplicates of one another in all material respects and sought to collect the same alleged debt from Plaintiff.

40. The above-described communications and conduct from Defendant to Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(10), 1692f, 1692f(1), and 1692g, amongst others.

**Mailed Copies of Collection Letters**

41. After transmitting at least nineteen separate debt collection letters to Plaintiff by email, Defendant did not cease its collection efforts on this Debt.

42. Instead, on or before July 2, 2026, Defendant mailed Plaintiff ten additional paper copies of substantially the same collection letters, again seeking to collect the same alleged obligations previously communicated by email, as shown below.



43. The above-described communications and conduct from Defendant to Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(10), 1692f, 1692f(1), and 1692g, amongst others.

## CONCRETE HARM AND DAMAGES

### *Plaintiff Has Suffered Concrete Harms and Has Article III Standing*

44. Plaintiff incurred a financial expense when he was forced to seek legal advice as a direct result of Defendant 's unlawful collection practices, which violated Plaintiff's rights under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq.

45. On or around June 23, 2026, Plaintiff paid a legal consultation fee to determine his legal rights and obligations concerning the disputed debt and to assess whether the Defendant 's collection activities violated federal and state consumer protection laws.

46. Plaintiff's payment of this legal consultation fee constitutes an out-of-pocket economic loss, which courts have routinely recognized as a form of concrete injury sufficient to establish standing under Article III.

47. Even minor economic harms, such as the payment of legal fees, are tangible, real injuries that go beyond mere procedural violations of the law, as established in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

48. Moreover, the necessity of this consultation fee is directly linked to Defendant 's deceptive or unfair practices and directly financially harmed him. *See McNaught v.*

*Nolen*, 76 F.4th 764, 772 (8th Cir. 2023); *Hekel v. Hunter Warfield, Inc.*, No. 23-3091, 2024 WL 4402009, at *3 (8th Cir. Oct. 4, 2024).

49. Courts have held that expenses incurred because of a debt collector's unlawful actions, such as the costs of obtaining legal advice, constitute recoverable damages.

50. Plaintiff's payment here is analogous to cases where plaintiffs have been found to suffer concrete harm through the incurrence of costs to protect their legal rights (e.g., *Demarais v. Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017)).

51. As a direct and proximate result of Defendant 's unfair, deceptive, and unlawful conduct, Plaintiff was required to spend personal funds on legal services. This expense, which was necessary to understand Plaintiff's legal rights in response to the Defendant 's violations, constitutes a concrete harm under the *Hekel* standard, further illustrating that Plaintiff's injury is both real and particularized.

52. Plaintiff's financial loss of the legal consultation fee, incurred specifically to seek legal guidance in relation to this disputed debt, demonstrates a tangible economic injury and supports standing under Article III to pursue these claims in court.

53. Plaintiff received Defendant's repeated collection emails while he was at work.

54. As the emails continued arriving, Plaintiff became alarmed and was forced to interrupt and cut short the work he had been performing.

55. Plaintiff then located a private room and spent approximately two hours making telephone calls and attempting to determine why he had been referred to collections and whether Defendant was attempting to collect one debt or multiple separate debts.

56. Defendant's collection emails continued arriving while Plaintiff was speaking with HealthPartners and attempting to understand the situation.

57. During those communications, Plaintiff learned that the account had been referred for collection after the credit card associated with his automatic monthly payment plan expired.

58. Before referring the account for collection, HealthPartners had not contacted Plaintiff to request updated payment information.

59. As a direct result of Defendant's collection communications, Plaintiff lost productive work time, was required to divert his attention from his employment responsibilities, and incurred additional out-of-pocket expense in retaining counsel to investigate the alleged debt and advise him regarding his legal rights.

60. Plaintiff has Article III standing by way of suffering from the following concrete harms that came as a direct and proximate result of the Defendant 's conduct, errors, omissions, and violations of federal consumer protection laws as more detailed herein, specifically:

**HARMS: EMOTIONAL**

- Harassment
- Oppression
- Annoyance
- Abuse
- Upset

- Fear
- Frustration
- Time wasted learning rights

**HARMS: LEGAL**

- Attorney's fees

***Summary***

61. The above-described collection conduct by Defendant in its efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair, and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

62. These collection actions taken by Defendant, and the collection employees employed by Defendant, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of those laws cited herein.

63. These violations by Defendant were knowing, willful, negligent and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

64. Defendant's collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm because the FDCPA provides Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

65. Defendant's deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated

Plaintiff's ability to intelligently respond to Defendant's collection efforts because Plaintiff could not adequately respond to the Defendant's demand for payment of this debt.

***Respondeat Superior Liability***

66. The acts and omissions herein of the individuals employed to collect debts by Defendant, and the other debt collectors employed as agents of Defendant who communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant.

67. The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

68. By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant.

69. Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the state and federal law in its attempts to collect this debt from Plaintiff.

## TRIAL BY JURY

70. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## CAUSES OF ACTION

**COUNT I.**

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**15 U.S.C. § 1692 *et seq.***

71. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72. The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*, with respect to Plaintiff.

73. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages and statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant as follows:

- for an award actual damages and statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendant and for Plaintiff;
- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant and for Plaintiff;
- for an award to Plaintiff reasonable attorney's fees and costs incurred in this action, as permitted by law.

- for all actual compensatory damages suffered;
- for all other recoveries and fees otherwise permitted by these claims and by law;
- for attorney's fees and costs of suit as provided by state and federal law;
- for both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;
- and for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: July 21, 2026

**THE BARRY LAW OFFICE, LTD**

By: s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
1422 Asbury Street N
St. Paul, MN 55108-2434
Telephone: (612) 379-8800
pbarry@lawpoint.com

***Attorney for Plaintiff***

## VERIFICATION OF COMPLAINT AND CERTIFICATION

The undersigned verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information, best recollection and belief formed after reasonable inquiry.
3. I believe that this Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this Complaint in good faith and solely for the purposes set forth in it.
6. Each exhibit I have provided to my attorneys that has been attached to this Complaint, if any, is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorney where appropriate, I have not altered, changed, modified, or fabricated any attached exhibits, except that some of those exhibits may contain some of my own handwritten notations.

***I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.***

Signature Michael Dunn
Michael Dunn (Jul 21, 2026 13:58:11 CDT)

**NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")**

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad Michael, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad Michael, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

Miller v. Lankow, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cell phones**. The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI**. This demand is reasonable and necessary. Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible. For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible. Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.** You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand. Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI. Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good Michael to secure and audit compliance with that litigation hold.** You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy or alter ESI.** This is not a concern that is unique to you or your organization.

Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence. You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control. You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.** In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods imposes a significant threat of spoliation and data loss. Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.** Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.** System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files. As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved.** Alternatively, if you

promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.** If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court. I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.** If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention. Thank you for your anticipated cooperation in this vital matter.